H. H. Arnold Secretary to the Regents University of Colorado 201 Regent Hall Boulder, Colorado 80309
Dear Bud:
As a result of a series of recent developments, this office initiated a review of the statutory, fiscal and personnel requirements of legal services to the University of Colorado in conjunction with the applicant screening agreement which we established with you earlier this year for the purpose of selecting additional special counsel for the University. The following constitutes the results of that study, which had as its principal premises both the factors of cost to the State taxpayers and the provision of timely, competent legal advice to the University.
QUESTION PRESENTED AND CONCLUSION
Does the attorney general have statutory responsibility to provide legal representation to the Regents of the University of Colorado?
My conclusion is "yes."
ANALYSIS
A few words of background are in order. After the termination of John Holloway's designation as an Assistant Attorney General in 1975, I met with President Rautenstraus and several of the Regents in an attempt to agree upon procedure for selection of his replacement. At that time it was agreed that there would be joint participation by the Regents and this office in the selection of the replacement, which I had understood would include joint interviewing of applicants for the position. However, the procedure which actually took place was that the Regents interviewed the applicants and narrowed the list to five. That list of five was sent to me last summer (a year ago) and it was my understanding at that time that I was to indicate which of the five, if any, I would agree to designate as Special Assistant Attorneys General. I thereupon indicated that two of the five would be so designated by me upon their entering into a contract of employment with the University. The Regents, however, indicated that neither of the two were acceptable to them (although my understanding was that any of the five were acceptable when the list was initially transmitted), and we reached an impasse. A bill was submitted (Senate Bill 290) in the 1977 session of the Legislature to remove the Attorney General as legal advisor to the President and Board of Regents of the University (as well as other colleges and universities). About the same time, I proposed to the Regents that we reverse the screening process and that this office do the initial screening, sending a list of acceptable names to the Regents. That process was undertaken and has now been completed. In the meantime, Senate Bill 290, although passing the Senate, was killed in House Committee.
The applicable statute is C.R.S. 1973, 23-20-110, which states that: "The attorney general of the state shall be the legal advisor of the president and board of regents of the university, and he shall institute and prosecute or defend all suits in behalf of the same." This statute is still in full force and effect, and constitutes my duty and responsibility in relation to provision of legal advice and legal representation to the President and Board of Regents. There is no statute in existence authorizing the University to utilize legal counsel other than the office of Attorney General.
Since January 14, 1975, the policy of this office has been to provide full time legal services, and eliminate Special Assistant Attorneys General in favor of full time, coordinated legal services to all State officials and State agencies. That policy has been consistently followed. Exceptions have been made only in cases of conflict of interest, in specific cases where this office did not have the required expertise, or in situations where, as in the case of the University of Colorado, we simply did not have the fiscal ability within the appropriations of the Department of Law to provide sufficient legal counsel for the volume of legal work involved. Early this year, when the agreement was reached with the Regents for us to screen applicants for the university counsel position, that fiscal and manpower problem still existed, although we had sent a request to the J.B.C. for the funds necessary to remedy the situation. In addition, Senate Bill 290 had been introduced. Had it passed, the question would have become moot.
On June 20, 1977 I received a letter from Richard A. Tharp, who has been providing contract legal services at the Boulder campus as a Special Assistant Attorney General, detailing, at my request, the type of legal problems confronting the University and the amount of time required to deal with those problems. I have appended hereto a copy of that letter. The letter makes two major points: first, that the amount of time required to handle the priority items at the University is approximately 20-25 hours per week; second, that a substantial number of these priority problems constitute litigation associated with civil rights claims. It would appear, therefore, that not more than one FTE attorney is required for the position, rather than the two positions that were formerly allocated.
As of early 1977, our Education Unit had assigned to it only three full time attorneys. Due both to internal reordering of priorities and action of the Legislature via the Long Bill, that unit now has five full time attorneys. In addition, the insurance carrier for the State, for fiscal year 1977-78, dropped the insurance coverage on civil rights cases. In order to provide legal services to state agencies for such cases (a majority of which originate from the higher educational institutions of the State) we have been authorized and directed to undertake all of the legal defense of those cases and have been provided funds with which to do so. It would therefore appear that the most commonly encountered major litigation to which Mr. Tharp refers as a substantial part of the university legal workload is now a part of our ongoing responsibility to all State agencies, as well as C.U. We have been authorized funds to employ at least one additional FTE attorney in the Litigation Section specifically for this activity. Also, the Appellate Section has had an increase of one FTE attorney to handle the appellate workload.
As a result of the foregoing considerations, we now estimate that, with the exceptions mentioned below, this office is currently funded and staffed to undertake and carry on the provision of legal services and legal representation to the University of Colorado which were formerly performed by the separate counsel on the C.U. campus. Recently, I received a letter from Regent Sandy Kraemer expressing concern that certain legal work of the University was not being attended to. As indicated in the attached correspondence, this office had not earlier been apprised of such a problem. We immediately contacted President Rautenstraus, and were informed by him that there was no such problem, but that if one arose we would immediately be informed. This exchange, however, indicated to us the overriding need for close attention to the details of legal representation of the University. In my opinion, this can be done only by this office directly providing such coordinated legal services, rather than dividing responsibility between a separate counsel office at the University and this office.
It is, therefore, my conclusion that the applicable statutes, plus the current fiscal and manpower availability, mandate that this office directly provide the University with such legal services as it requires.
I would propose continuing the appointments as Special Assistants of George Dikeou at the Medical Center and Dick Tharp in Boulder, on the basis upon which they are now rendering legal services. I recognize that from time to time the university may wish to specially consult Mr. Tharp. His continuing expertise and knowledge of University problems make that course advantageous to both this department and, I would think, the university. Mr. Dikeou continues to do outstanding legal work for the Medical Center and, inasmuch as we do not have the capability to internally handle the work that he does, that special appointment should continue.
I emphasize that as a result of the foregoing, the university should realize a substantial savings in general fund money by not employing two full time attorneys on the Boulder campus. The salaries plus operating and travel costs associated with those positions should, in my estimation, save the university in the neighborhood of $100,000 per year utilizing my approach.
In conclusion, I have appended hereto a copy of a recent speech concerning the role of public lawyers which I made to the 16th Annual Workshop on Transportation Law, sponsored by the Transportation Research Board of the National Research Council. In that speech you will find the operating principles upon which this office has been based since the time I began my tenure in this office.
If you or any of the Regents have any further questions, I would be happy to respond to those questions at your convenience.
SUMMARY
The attorney general has the statutory responsibility to provide legal representation to the Regents of the University of Colorado.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER ATTORNEYS GENERAL
C.R.S. 1973, 23-20-110
HIGHER EDUCATION, DEPT. OF University of Colorado
The attorney general has the statutory responsibility to provide legal representation to the Regents of the University of Colorado.